EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
KATHARINE SCHONBACHLER
California Bar No. 222875
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3172
    Facsimile: (213) 894-7177
    E-mail: Katie.Schonbachler@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>$819,640.00 IN U.S. CURRENCY,<br><br>    Defendant. | No. CV 17-00269<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>21 U.S.C. § 881(a)(6)<br><br>[D.E.A.] |

    Plaintiff United States of America brings this claim against defendant $819,640.00 in U.S. Currency, and alleges as follows:

///

## JURISDICTION AND VENUE

1. The government brings this <u>in rem</u> forfeiture action pursuant to 21 U.S.C. § 881(a)(6).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395(a).

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant is $819,640.00 in U.S. Currency (the "defendant currency") seized from Miguel Sillas on or about June 10, 2016 at his residence in Los Angeles, California.[1]

6. The defendant currency was seized by law enforcement officers and is currently in the custody of the United States Marshals Service in this District, where it will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Miguel Angel Sillas, Theresa Maria Sillas, Miguel Jose Sillas, Sr. and Nicholas Sillas may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

8. On June 10, 2016, at approximately 9:20 p.m., officers assigned to the Los Angeles Police Department ("LAPD") Northeast Division's Gang Enforcement Detail ("GED") conducted a parole compliance check of Miguel Angel Sillas ("Sillas") at his residence in Los Angeles, California. On that date, Sillas was on active parole for a violation of California Penal Code Section 245(A)(4), assault with a deadly weapon. Officers knocked on the door, identified themselves, and stated that their purpose for being at the residence was to conduct a parole compliance check on Sillas. Sillas was seen running, seemingly excited, from room to room throughout his residence before he exited the residence for officers to conduct the compliance check. Maria Sillas, Miguel

---

[1] Pursuant to Local Rule 5.2-1, residential addresses have been omitted from this Complaint.

2

Jose Sillas, Sr. and Nicholas Sillas were also in the residence and exited the residence for the officers to conduct the compliance check.

9. Upon entering the residence, officers saw an orange electrical cord within the residence leading out of the front door and into a garage located behind the residence. The officers also saw surveillance cameras installed on the exterior of the residence. The surveillance cameras had attached wires that also led to the interior of the same garage. While the officers were looking at the cameras and wires, Sillas spontaneously stated, "There's a .38 in my closet." This statement raised the officers' suspicion about what was in the garage because, based on the officers' experiences, it was out of character for a parolee to spontaneously make this type of statement. Maria Sillas told officers that the garage was a part of the residence, at which time the officers secured the garage until the residence had been searched. Officers noted that Sillas' vehicle was parked directly in front of the garage.

10. While searching Sillas' bedroom, officers found the following items:

    a. a loaded Smith and Wesson .38 caliber revolver inside of a shoebox located in his closet;

    b. a key ring containing three keys inside of a different shoebox in the same closet;

    c. a safe located under Sillas' bed;

    d. one ballistic vest located in a separate closet space; and

    e. $800.00 in U.S. currency, which is not part of the defendant currency, found inside of a shoe organizer located in one of the bedroom closets.

11. Officers found a second safe in the residence's laundry room, to which Sillas had access.

12. Officers then walked into the residence's garage and saw that the surveillance camera wires attached to the exterior-mounted cameras were connected to a surveillance system located within the garage. Officers also found and seized the following from the garage:

3

      a.    one loaded Charles Daly brand shotgun hidden inside of a guitar case;

      b.    shotgun ammunition;

      c.    loaded ammunition magazines; and

      d.    one black mask.

13. The safe found in Sillas' bedroom and the safe found in the laundry room were both opened by officers using keys on the key ring that was found in Sillas' bedroom closet. While at Sillas' residence, officers opened both safes and found an undetermined amount of U.S. currency.

14. Sillas was arrested and he and the items listed above in paragraphs 10-13 were transported to the LAPD Northeast Division station. At the LAPD station, a trained and certified narcotic detection canine, "Jess," conducted a sniff of the defendant currency and positively alerted, which signified that the defendant currency and the safes in which the defendant currency was stored, had been in close proximity with narcotics. At the time of the sniff, "Jess" was certified by the LAPD and the National Police Canine Association in narcotics detection and had received 970 hours of training.

15. The currency was later counted. The safe found in Sillas' bedroom contained $216,830.00 in U.S. currency and the safe found in the laundry room of Sillas's residence contained $602,810.00 in U.S. currency, amounting to a total of $819,640.00 in U.S. Currency (<u>i.e.</u>, the defendant currency).

16. The following facts, among others, indicate that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking or was intended to be used in one or more exchanges for a controlled substance. Sillas is a known Avenues gang member with an extensive narcotics and violent crimes criminal history, there was a positive dog alert on the defendant currency, Sillas' residence had several loaded firearms in it during a parole compliance check, and Sillas' residence had surveillance cameras and two safes containing over $800,000 in U.S. currency. Sillas has spent a significant amount of time in state and federal custody over the past ten years, which would make it extremely unlikely that Sillas could have acquired this much currency

from any legitimate sources.

17. The Avenues gang has a long history of trafficking, selling and distributing narcotics, and gang members are expected to sell and distribute narcotics and protect the narcotics operations and revenue with guns, which is what the officers believe Sillas was doing.

18. Sillas's residence appeared to be a "stash house" for the defendant currency. A "stash-house" is a home or apartment used by criminals to hide drugs, guns, people or money obtained from illicit means. Sillas was monitoring activity around the residence through surveillance systems and the presence of live ammunition, a shotgun, and a handgun indicate that Sillas was equipped to protect the defendant currency.

19. Furthermore, the surveillance system at the Sillas residence was not limited to monitoring the immediate area of the residence. It also captured street traffic activity and the access route leading to the residence despite the fact that it was located in the rear of the residence. This is consistent with Sillas engaging in counter-surveillance to alert Sillas to the presence of police or gang rivals coming near the residence. Protected stash-houses offer criminals the ability to separate and secure the various contraband of a narcotics operation at different locations (i.e., narcotics proceeds, narcotics and guns). This technique prevents the total loss or dismantling of a criminal's operation in the event that police or rival criminals raid one stash-house while other contraband would be stored separately in another stash-house.

20. In the days following his arrest, Sillas discussed plans to lie about the source of the defendant currency in recorded telephonic jail calls, including possibly telling law enforcement that it was lottery ticket winnings but that he lost the winning ticket.

21. In connection with the above described arrest, on June 28, 2016, a grand jury in the Central District of California returned an indictment in United States v. Sillas, Case no. CR 16-455, charging Sillas with violations of 18 U.S.C. §§ 922(g)(1) (felon in possession of firearm and ammunition and 931(a) (violent felon in possession of body

armor).

22. Sillas was in continuous custody in both federal and state facilities from approximately April 7, 2012 until December 21, 2015, as detailed below:

    a. On March 12, 2012, Sillas was arrested by LAPD for assault with a deadly weapon, in violation of California Penal Code Section 245(a)(1). He was released after two days.

    b. On April 7, 2012, Sillas was arrested for a violation of his federal supervised release based upon his March 12, 2012 arrest, and transferred to federal custody on April 9, 2012.

    c. On February 7, 2013, Sillas was convicted of assault with a deadly weapon, in violation of California Penal Code section 245(A)(4) and sentenced to four years in state prison.

    d. On November 20, 2015, Sillas was released from state prison and transferred into federal custody related to his previous federal supervised release violation. He was convicted of the violation and released on December 21, 2015.

23. On June 12, 2008, a grand jury in the Central District of California returned an indictment charging Sillas and others with a violation of 18 U.S.C §1962(d), the Racketeering Influenced and Corrupt Organization (RICO) statute. He pled guilty and was sentenced to 44 months in federal prison and three years of supervised release. Sillas commenced supervised release on December 2, 2011 and, as noted in paragraph 19(a), was arrested within a few months of his release from prison.

24. On March 29, 2007, Sillas was arrested in Los Angeles, California for a violation of California Penal Code Section 12280(b) (possession of an assault weapon). He remained in county custody until his conviction of the weapons violation. He was sentenced to sixteen months in state prison and was released from state prison on or about December 30, 2007.

25. On January 27, 2007, Sillas was arrested for a violation of California Penal Code Section 422 (criminal threats).

1  26. On August 3, 2006, October 20, 2006, and December 27, 2006, Sillas was arrested for a violation of California Penal Code Section 166(A)(4) (violation of a court order), specifically for violating an Avenues gang injunction order.

27. On February 21, 2006, Sillas was arrested for violations of California Health and Safety Code Sections 11378 (possession of a controlled substance for sale) and 11379 (transportation of a controlled substance).

28. On December 28, 2004, Sillas was arrested for a violation of California Penal Code Section 496(D)(a) (possession of a stolen vehicle).

29. Based on the above, plaintiff alleges that the defendant currency represents or is traceable to proceeds of illegal narcotic trafficking or was intended to be used in one or more exchanges for a controlled substance or listed chemical, in violation of 21 U.S.C. § 841 et seq.  The defendant currency is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant currency;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

///

1        (d)    for such other and further relief as this Court may deem just and proper,
2 together with the costs and disbursements of this action.

Dated: January 12, 2017

EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section


   /s/
KATHARINE SCHONBACHLER
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

## VERIFICATION

I, Michael Perez, hereby declare that:

1. I am a Task Force Agent with the Drug Enforcement Administration and the case agent for the forfeiture matter entitled United States of America v. $819,640.00 in U.S. Currency.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed January 11, 2017 in RIVERSIDE, California.

MICHAEL PEREZ